**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 14-cv-02513-REB-MJW

BRANZAN ALTERNATIVE INVESTMENT FUND, LLLP, on behalf of itself and all others similarly situated,

    Plaintiff,

v.

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,
and ENERGY CORPORATION OF AMERICA,

    Defendants.

## ORDER OVERRULING OBJECTIONS TO AND ADOPTING RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Blackburn, J.**

The matters before me are (1) the **Report and Recommendation on Defendant The Bank of New York Melon Trust Company, N.A.'s Amended Motion To Dismiss (Docket No. 30) and Defendant Energy Corporation of America's Amended Motion To Dismiss (Docket No. 32)** [#57],[1] filed September 3, 2015; and (2) the objections contained in **Plaintiff's Objections to Recommendation of Magistrate** [#65], filed September 21, 2015. I overrule the objections, approve and adopt the recommendation, and grant the underlying motions to dismiss.[2]

---

[1] "[#57]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] Plaintiff requests oral argument on its objections. The issues raised by and inherent to the objections are fully briefed, obviating the necessity for oral argument. Thus, the motions stand submitted on the papers.

As required by 28 U.S.C. § 636(b), I have reviewed *de novo* all portions of the recommendation to which objections have been filed, and have considered carefully the recommendation, the objections, and the applicable caselaw.  The recommendation is exhaustively detailed and cogently reasoned.  So thoroughly has the magistrate judge considered and analyzed the issues raised by and inherent to the motion that any extended exegesis on my part would be little more than a superfluous festooned reiteration of his excellent work.

Plaintiff first objects to the magistrate judge's conclusion that plaintiff and the class of Unitholders it seeks to represent are not third party beneficiaries of the Royalty Conveyance under West Virginia law, and therefore that Count 3 should be dismissed.  The West Virginia courts have taken a firm position on when a contract may be considered to have been made for the benefit of a third party:

> In the absence of a provision in a contract specifically stating that such contract shall inure to the benefit of a third person, there is a presumption that the contracting parties did not so intend and in order to overcome such presumption the implication from the contract as a whole and the surrounding circumstances must be so strong as to be tantamount to an express declaration.

**Eatern Steel Constructors, Inc. v. City of Salem**, 549 S.E.2d 266, 278 (W. Va. 2001). Acknowledging that the Royalty Conveyance contains no express provision conferring third-party beneficiary status on Unitholders, plaintiff nevertheless argues that the surrounding circumstances pled in the complaint are sufficient to create a plausible inference tantamount to such an express declaration.

I concur with the magistrate judge that they are not.  Contrary to plaintiff's objection, the magistrate judge did not conflate the surrounding circumstances test with

2

a finding of contractual ambiguity. Indeed, as plaintiff recognizes, contractual ambiguity itself is a prerequisite for application of the surrounding circumstances test. The magistrate judge here properly considered the contractual provisions plaintiff suggested conferred third-party beneficiary status on Unitholders, but found them insufficient to create the necessary strong inference. I perceive no error in that determination.[3]

Moreover, even if the circumstances identified by plaintiff were sufficient in all other respects to overcome the presumption, nothing in the Royalty Conveyance properly may be considered to support the conclusion that the contract was made for the *sole* benefit of the Unitholders. ***See id.*** at 277 ("We have . . . consistently given force to the 'sole benefit' requirement."). Plaintiff's attempt to avoid this limitation of West Virginia law by invoking a "creditor beneficiary" exemption is unconvincing. Even if plaintiff had properly pleaded this separate equitable cause of action – which it has not – the covenants which ECA allegedly breached here were not "in satisfaction of [a] legal duty" owed to the Unitholders, such as is necessary to invoke that exception. ***See Pettus v. Olga Coal Co.***, 72 S.E.d2d 881, 884 (W.Va. 1952). Accordingly, I approve and adopt the magistrate judge's recommendation to grant ECA's motion to dismiss Count 3 of the complaint.

I further concur with the magistrate judge that Counts 1 and 4 must be dismissed as derivative claims as to which plaintiff has failed to comply with the prerequisites of

---

[3] Plaintiff takes issue with the magistrate judge's suggestion that its arguments in support of third-party beneficiary status could apply to any IPO transaction, pointing out that no West Virginia court has ever rejected such a claim. Nothing in that argument undermines the magistrate judge's recognition that third-party beneficiary status is not the norm under West Virginia law and therefore that circumstances that are likely to arise frequently simply by virtue of the nature of the contract may not be thought to support an inference. This court presumes that the laws of logic and common sense apply equally in West Virginia as they do elsewhere.

Delaware law.[4]  The determinative test under Delaware law is that set forth in ***Tooley v. Donaldson, Lufkin & Jenrette, Inc.*** 845 A.2d 1031 (Del. 2004):

> Th[e] issue [whether a shareholder claim is derivative or direct] must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?

*Id.* at 1033 (emphasis in original).  Stated more succinctly, "to bring a direct action, the stockholder must allege something other than an injury resulting from a wrong to the corporation."  *Id.* at 1038.  Claims of corporate mismanagement harm all shareholders equally and therefore are considered derivative.  Because, despite much *Sturm und Drang*, Counts 1 and 4 essentially allege no more than corporate waste and mismanagement and do not assert any duty owed independently to the Unitholders, the magistrate judge properly concluded that they were derivative and therefore should be dismissed.

With respect to Count 1, the magistrate judge rejected plaintiff's contention that the Unitholders may enforce specific constraints on the Trustee's authority contained in the Trust Agreement, noting that, with one minor exception unrelated to the injury complained of, none of the contractual duties allegedly breached were owed to the Unitholders directly.  (**Recommendation** at 20.)  Plaintiff counters that under Delaware law, "[s]tockholders . . . can sue directly to enforce a constraint on the board's authority."

---

[4] Count 1 alleges a cause of action for breach of contract against the Trustee for allowing ECA to purchase the royalty interest without complying with provisions and procedures of the Trust Agreement. Count 4 asserts a claim for breach of contractual duties allegedly owed by ECA to the trust, which plaintiff maintains Unitholders can assert directly under equitable principles.

*Allen v. El Paso Pipeline GP Co., L.L.C.*, 90 A.3d 1097, 1107 (Del. Ch. 2014). Yet that proposition is not so broad as plaintiff's out-of-context citation would make it appear. As the *Allen* court itself went on to explain, stockholders' rights in this regard arise from "the Delaware Supreme Court's longstanding recognition that the DGCL [Delaware General Corporation Law], the certification of incorporation, and the bylaws together constitute a multi-party contract among the directors, officers, and stockholders of the corporation . . . . [which] stockholders can enforce . . . directly." *Id.* at 1107-08 (footnote omitted). No such structural rights are implicated here, however, because the DGCL is not implicated by this statutory trust.

More importantly, "*Allen* did not expansively hold that all suits by a shareholder to enforce contractual rights constitute a direct claim." *Halpert v. Zhang*, 2015 WL 1530819 at *4 (D. Del. April 1, 2015), *adopted*, 2015 WL 1869755 (D. Del. April 21, 2015).[5] Viewing the caselaw in this area more closely, as the magistrate judge did, plainly shows that he focused appropriately on whether plaintiff alleged the breach of duties owed directly to the Unitholders, as opposed to those running only between the parties to the Trust Agreement. That analysis adequately addressed both prongs of the *Tooley* standard. *See Tooley*, 845 A.2d at 1036 n.9. Because Count 1 at base is simply a "creative attempt to recast the derivative claim . . . by alleging the same fundamental harm in a slightly different way," it is properly dismissed. *Feldman v.*

---

[5] Indeed, the *Allen* court itself cautioned that its holding should not be read to "mean that all intra-entity limited partnership claims become direct," and "distinguished between suits for breach of the limited partnership agreement [which are direct] and suits challenging the discretion afforded to the general partner [which are derivative]." *Allen*, 90 A.3d at 1109.

*Cutaia*, 951 A.2d 727, 733 (Del. 2008).[6]

Plaintiff also objects that Counts 1 and 4 (which plaintiff admits would be derivative had the Trust not been cancelled) should be allowed to proceed as a matter of equity under the second prong of *Tooley*. It relies for this proposition primarily on *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006), in which the Delaware Supreme Court stated, in dicta, that where a corporation had been dissolved,

> there is no corporate entity to which a recovery of the fair value of those shares could be paid. The only available remedy would be damages[.] The only parties to whom that recovery could be paid are the plaintiffs. Hence, although under *Tooley* the claim could be brought derivatively or directly, as a practical matter, the only claim available after [the corporation] was liquidated is a direct action by the plaintiffs.

*Id.* at 103. However, like the magistrate judge, I am unpersuaded that *Gentile* creates the broad equitable exception plaintiff advocates. For one thing, as the magistrate judge cogently explained, the cases on which plaintiff relies, including *Gentile* itself, are distinguishable on their facts because they essentially alleged the breach of duties owed directly and specifically to minority interests by controlling interests. (*See* **Recommendation** at 12-14.)

Moreover, despite some loose language in *Gentile* characterizing a specific type of breach of fiduciary duty claim having a "dual character," *id.* at 99-100 & n.19, what

---

[6] Nor am I convinced by plaintiff's underdeveloped argument that the allegations of the complaint are sufficient to state a direct claim under the rubric of a "fair dealing" or "fair price" claim. (**Obj.** at 10-11.) *See Feldman v. Cutaia*, 951 A.2d 727, 734-35 (Del. 2008); *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348, 353-54 & n.7 (Del. 1988). Plaintiff's claims "clearly do[] not rise to an attack on the [sale] itself," *Feldman*, 951 A.2 at 735, even accepting plaintiff's invitation (in the absence of specific references) to read the complaint "as a whole."

the court actually recognized is that one set of facts may give rise to two separate harms and thus two separate claims, one derivative and the other direct, *see id.* ("[T]he public (or minority) stockholders also have a separate, and direct, claim arising out of that same transaction."). **See also Grimes v. Donald**, 673 A.2d 1207, 1212 (Del. 1996) ("Courts have long recognized that the same set of facts can give rise to both a direct claim and a derivative claim."). Thus, although the derivative claim in **Gentile** was extinguished by the dissolution of the corporation, the direct claim of the minority shareholders lived on. This is a far cry from plaintiff's suggestion that, in the gap left by cancellation of the trust, equity steps in to transform a previously derivative claim into a direct one.[7]

    I thus find and conclude that the arguments advanced, authorities cited, and findings of fact, conclusions of law, and recommendation proposed by the magistrate judge should be approved and adopted.

    **THEREFORE, IT IS ORDERED** as follows:

    1. That the recommendation contained within the magistrate judge's **Report and Recommendation on Defendant The Bank of New York Melon Trust Company, N.A.'s Amended Motion To Dismiss (Docket No. 30) and Defendant Energy Corporation of America's Amended Motion To Dismiss (Docket No. 32)** [#57], filed September 3, 2015, is approved and adopted as an order of this court;

    2. That the objections contained in **Plaintiff's Objections to Recommendation of Magistrate** [#65], filed September 21, 2015, are overruled;

---

[7] Moreover, cancellation of the trust would not appear to preclude pursuit of a derivative claim under Delaware law. *See* 12 Del. Ch. § 3810(g)

   3. That **Defendant The Bank of New York Mellon Trust Company, N.A.'s Amended Motion To Dismiss** [#30], filed October 16, 2015, is granted;

   4. That **Defendant Energy Corporation of America's Amended Motion To Dismiss** [#32], filed October 16, 2014, is granted'

   5. That Counts 1, 3, and 4 of the complaint are dismissed with prejudice in their entirety, and Count 5 is dismissed with prejudice as against defendant Energy Corporation of America; and

   6. That at the time judgment enters, judgment with prejudice shall enter as follows:

   a. As to Count 1, on behalf of defendant The Bank of New York Mellon Trust Company, N.A., and against plaintiff, Branzan Alternative Investment Fund, LLLP, on behalf of itself and all other similarly situated; and

   b. As to Counts 3, 4, and 5, on behalf of defendant Energy Corporation of America, and against plaintiff, Branzan Alternative Investment Fund, LLLP, on behalf of itself and all other similarly situated.

   Dated September 29, 2015, at Denver, Colorado.

**BY THE COURT:**

*[signature: Bob Blackburn]*

Robert E. Blackburn
United States District Judge
